MICHAEL GAVIN, Administrator de bonis non of
JOHN GAVIN, Deceased *vs.* MICHAEL CARLING.

*Settlement of a Decedent's Estate—Appropriation of Decedent's
Property by the Widow, his Administratrix—Powers of the
Orphans' Court—Re-opening and Re-stating an Account—
Unadministered Assets—Administrator de bonis non—Art.
93, sec. 12, of the Code—Order of Orphans' Court to sell
Leasehold Property appropriated by the Widow of Decedent,
his Administratrix, and Mortgaged by her, and her Second
Husband—Notice—Improvements made by Second Husband—
Rights of Mortgagee—Equitable apportionment—Settlement
in Orphans' Court, or in Equity, under a Proceeding for
Injunction to stay Sale, issued at instance of Mortgagee.*

G. died, leaving a widow and minor children surviving him. His
widow took out letters of administration on his estate, and after-
wards re-married. She passed her account, whereby she appro-
priated to her own use, at the appraised value, the decedent's
estate, consisting for the most part of leasehold property, in satis-
faction of her advances to the estate to pay its debts and expenses,
and of her distributive share. Her second husband, after improv-
ing the leasehold property, mortgaged it (she uniting therein,) to
C., who, under decree of foreclosure, bought the property at the
trustee's sale. The administratrix having died, and the account
being, upon application of her children of the first marriage,
re-opened by the Orphans' Court and re-stated, and it being held
that the leasehold property, was unadministered, the eldest son of
G. was appointed administrator *d. b. n.,* and ordered to sell the
leasehold property, and was about to do so, when stayed by an
injunction, issued on the bill of complaint of the mortgagee. In
this proceeding it was HELD :

1st. That the widow and administratrix of G., had no right to appro-
priate the decedent's property to her own use; and that the Orphans'
Court should not have authorized such act; that it was competent
for that Court to re-open the account and have it re-stated, and
show that the leasehold property remained unadministered.

2nd. That letters of administration *d. b. n.*, were properly granted to the son of G., as the husband of the deceased administratrix, was not authorized under Art. 93, sec. 12, of the Code, to take charge of, and administer property left unadministered by her; and that it was the right and duty of the administrator *d. b. n.*, to sell the leasehold property and account for the proceeds.

3rd. That the parties were chargeable with knowledge of the defects in the proceedings in the Orphans' Court, and should be held to have dealt with respect to the property, in subordination to the rights of those interested in the legal settlement of the estate; that the mortgagee, however, was entitled by virtue of his mortgage, to whatever interest or right the mortgagors had in the premises at the date of the mortgage; but that in dealing with the net proceeds of sale, there should be an equitable apportionment made between the value of the property as it was left by the decedent, and the permanent beneficial improvements placed thereon since his death, rating their value and the enhancement of the property, as at the time of the sale, the improvements thus to be allowed to bear their proportion of all taxes, insurance and other charges and expenses, assessed or paid upon the basis of the improved condition of the property; and after all proper deductions, made upon fair and just principles of accounting, from the value of the improvements thus ascertained, and the one-third interest of the widow of G., to which those amounts were subject, the balance, whatever that might be, would be the extent of the mortgagee's interest in the premises; and that amount he should receive from the proceeds of sale; and that this settlement might be effected in the Orphans' Court, or the bill in equity retained to enforce the rights of the parties.

APPEAL from the Circuit Court of Baltimore City.

John Gavin died in 1861, leaving a widow and four children, Michael, Mary, Margaret and John. In 1864, the widow, Mary Gavin, was appointed by the Orphans' Court of Baltimore City, administratrix of the estate of her deceased husband, and on the 16th July, 1869, she passed an account, taking to herself the whole of the leasehold property and personal chattels of the deceased, at its appraised value. The children were then all under age. In 1864, Mary Gavin had intermarried with John

McNulty, and on the 20th December, 1875, they executed a mortgage of the leasehold property of John Gavin, deceased, being a dwelling and lot of ground on Lexington Street, mentioned in the account passed by her in the Orphans' Court, to Michael Carling, to secure a debt due by John McNulty to Carling. This mortgage Carling foreclosed, and became the purchaser of the property mentioned, and received a deed for the same from the trustee appointed to make the sale. Mrs. McNulty, formerly Gavin, having died in November, 1876, the children of John Gavin, deceased, applied to the Orphans' Court to have the administration account re-opened, and to be permitted to surcharge and correct the same. The Orphans' Court, after hearing the facts in the case, passed an order dated June the 28th, 1877, referring the account of the administration of John Gavin's estate to the auditor to be re-stated in conformity with the judgment of the Court accompanying the order. The account was subsequently stated by the auditor and approved by the Court. Michael Gavin, the appellant, was then appointed administrator *d. b. n.* of the estate of John Gavin, deceased, and having been ordered by the Orphans' Court to sell the property on Lexington Street, was proceeding to sell the same, when stayed by an injunction issued on the bill of complaint of Michael Carling, by the Circuit Court of Baltimore City.

The answer of the defendant, Michael Gavin, administrator *d. b. n.* being filed and testimony taken, the Court, (GILMOR, J.) adjudged that Carling was entitled to hold the property free from all claim of Michael Gavin, administrator *d. b. n.*, and from all claim of persons claiming under John Gavin, deceased, and further decreed, that the injunction be made perpetual. From this decree Michael Gavin appealed. The case is further stated in the Court's opinion.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*William A. Taaffe* and *James McColgan,* for the appellant.

The appellee was not entitled to relief. He had ample and adequate remedy in the Orphans' Court or at common law. Upon a proper showing, the order of the Orphans' Court could have been revoked, an issue could have been framed and sent to a Court of law, the sale could have been set aside on exceptions filed thereto, or he could have taken an appeal to this tribunal. Failing to take advantage of his legal remedies, in the absence of fraud or surprise, he cannot have recourse to equity. *Belt, Adm'r vs. Blackburn,* 28 *Md.,* 234; *Gardner vs. Jenkins,* 14 *Md.,* 61; *Windwart vs. Allen,* 13 *Md.,* 197; *Chappell vs. Cox,* 18 *Md.,* 513; *Suit vs. Creswell,* 45 *Md.,* 531; *Lyday vs. Douple,* 17 *Md.,* 188; *Briesch vs. McCauley,* 7 *Gill,* 197; *Fowler vs. Lee,* 10 *G. & J.,* 358; *Prather vs. Prather,* 11 *G. & J.,* 110; *Dilly & Heckrotte vs. Barnard,* 8 *G. &. J.,* 171; *Gott & Wilson vs. Carr,* 6 *G. & J.,* 309; *O'Bryan vs. Gibbons,* 2 *Md. Ch.,* 9; *Marine Ins. Co. of Alexandria vs. Hodgson,* 7 *Cranch,* 332; *Barker vs. Elkins,* 1 *Johns. Ch. Rep.,* 465; 2 *Story Eq.,* 895 *a.*

Neither McNulty, nor the appellee claiming through him, is entitled to compensation for the improvements made by McNulty. The title to the property in the administratrix of John Gavin, was a matter of record, and McNulty, when he took the mortgage, had notice thereof. Compensation is only allowed in such cases where the party made the improvements *bona fide* and believing himself to have title. McNulty never pretended nor claimed that he had any title to this property. *Union Hall Association vs. Morrison,* 39 *Md.,* 281.

Even if the appellee were entitled to compensation for the improvements, or for the support of the children of

Mrs. Gavin by McNulty, the same should be determined at law by a jury trial.

*Richard J. Gittings,* for the appellee.

1. It was competent to the Orphans' Court to authorize John Gavin's widow to take the personal property in question, at the appraised value. The evidence shows that the appraisement was a just one, and that the estate suffered no prejudice by the absence of a public sale. A conversion of it into money was indispensable in order to effect a distribution; and in view of all the circumstances, including the fact that the estate was a very small one, and the evident good faith of the whole proceeding, the discretion of the Orphans' Court was well exercised in sanctioning the arrangement and avoiding needless expenses of advertising and sale. 1 *Code P. G. L,* 679, *Art. 93, secs.* 272, 273, 274; *Ridman vs. Keller,* 2 *Gill,* 145; *Williams vs. Marshall,* 4 *G. & J.,* 379; *Allender vs. Riston,* 2 *G. & J.,* 99.

2. *A fortiori,* the transaction, which was in effect a judicial sale, cannot be disturbed after so long a lapse of time, and as against a subsequent *purchaser,* who, upon the faith of the Orphans' Court proceedings, has been led *bona fide* to pay a valuable consideration for the property.

3. The purchaser, Mr. Carling, has an equity entitling him to protection against a litigation which is so plainly vexatious and unjustifiable. Under any view of the legal effect of the Orphans' Court account, he is entitled to be subrogated to all the equities of Mr. and Mrs. McNulty. The widow was entitled to a clear third of all the estate. Upon the supposition that the leasehold in question was worth any more than she paid for it, she was entitled to one-third of any such difference. For the improvements erected by McNulty at his own expense, the property was equitably chargeable. The outlay so made amounted to more than $2000, to which must be added interest for

about fifteen years. McNulty and his wife—the natural guardian of her children by her former husband, were entitled to an allowance for their support, which, at the lowest possible estimate, must alone have absorbed any conceivable interest of theirs in the property. On this ground, therefore, independently of any other, the action of the Court of equity, in enjoining against a disturbance of the title of the appellee was amply justified.

4. The appellant, Gavin, has been guilty of unjustifiable *laches*. The transaction to which his mother was a party, and which he now seeks to disturb, took place in July, 1869, and, although he was at that time a minor, he attained majority the 16th of September, 1871, and he afterwards waited until October, 1877, a period of six years, during which the mortgage to Carling and subsequent sale were made.

The jurisdiction of equity to prevent the cloud which would be cast upon the title of the appellee by the contemplated sale is clear. *Polk vs. Reynolds,* 31 *Md.,* 106 ; *McCann vs. Taylor,* 10 *Md.* 418.

ALVEY J., delivered the opinion of the Court.

That Mrs. McNulty, as administratrix of her former husband, John Gavin, deceased, had no right or power to appropriate the personal estate of the decedent to her own use, at the appraised value thereof, and thus make the property her own, to indemnify herself for money advanced to pay the debts and expenses of the estate, is entirely clear, upon what has been decided by this Court upon more than one occasion. *Hall vs. Griffith,* 2 *H. & J.,* 483 ; *Haslett's Adm'r vs. Glenn,* 7 *H. & J.,* 17. Nor had the Orphans' Court the power to authorize such appropriation. Hence the account settled in the Orphans' Court by the administratrix, on the 16th of July, 1869, was clearly erroneous, at least in so far as it allowed her to retain the leasehold property on Lexington street,

Baltimore, in satisfaction of her advances to the estate of $339.57, according to that account, and of her distributive share, as there allowed, of $90, aggregating $430. The appraised value of the leasehold property was $400.

The account being thus erroneous upon its face, and subject to impeachment by those interested in the proper settlement of the estate, it was perfectly competent to the Orphans' Court, upon application, to re-open the account, and to direct a re-statement thereof, in order to correct the errors disclosed; as was done by the order of that Court of the 28th of June, 1877. *Scott vs. Fox,* 14 *Md.,* 388; *In the Matter of Stratton's Estate,* 46 *Md.,* 551. And as there is nothing appearing in the record to raise a doubt as to the correctness of the account as re-stated, and approved by the order of the 17th of August, 1878, we must take that account, as thus re-stated and approved, as being in all respects proper and correct. The account speaks and shows the condition of the estate as of the 16th of July, 1869. And instead of being a final account, closing the administration of the estate, according to the profession and showing of the original account as stated and passed, it now appears that the estate is still open, and that the leasehold property remains *unadminstered.* Mrs. McNulty died in the latter part of the year 1876, and before any further or final account was settled; and consequently, an administration *de bonis non* became necessary; and such letters have been granted, and the unadministered property has devolved upon the administrator *de bonis non,* who is the defendant in this cause. Under sec. 12 of Art. 93 of the Code, the surviving husband of the deceased administratrix is required to state an account; but that account is only required to show " the amount of money and property received, and of payments and disbursements, made by such administratrix, or that may have been received or paid by him, (the husband) and not before accounted for with the Court." He is not authorized to

take charge of and administer property left unadministered by the deceased administratrix.

There can be no question therefore but that the leasehold property in question, and which forms a part of the personal estate of John Gavin, deceased, has legally and rightfully devolved on the defendant as administrator *de bonis non;* and we think it equally free from doubt that he has a right, and that it is his duty, to proceed to sell such property, and account for the proceeds. There would, however, appear to be some considerable hardship in the case; the property having been improved at considerable cost, and the parties having acted on the settlement of the estate as made by the sanction of the Orphans' Court, allowing the leasehold property to be taken by the widow of the deceased at a valuation, by making an assignment of it by way of mortgage to a third party for valuable consideration. But the parties must, in strictness, be chargeable with knowledge of the defects in the proceedings in the Orphans' Court, and be held to have dealt with respect to the subject-matter in subordination to the rights of those interested in the legal and proper settlement of the estate.

We are of opinion, however, that there is an equity in respect to the proceeds of sale, to which the complainant is entitled. He, of course, is entitled, by virtue of his mortgage, to whatever interest or right McNulty and his wife, the mortgagors, had in the premises at the date of the mortgage. The proof shows that at the death of Gavin, the leasehold lot was but poorly improved. It had a small house upon it, consisting of two small rooms, one over the other, and a small shed back-building, of one room, used for a kitchen. As we have already stated, this lot with the improvements upon it, was only valued at $400. And this was nearly all the property he left, and it was the only home of his family, consisting of his wife and four minor children—two boys and two girls. After the

widow married McNulty, in 1864, there was not room in the house for the decent and comfortable accommodation of the family. The enlargement of the building became a necessity if the family continued to occupy the property as a home. Under the press of this necessity, McNulty, after his marriage, tore down the old and erected in its stead a new substantial house, adequate to the wants and requirements of the family, at a cost of over $2000. This was the improvement on the lot at the time it was mortgaged to the complainant in December, 1875. The property, thus improved, was sold to the complainant, under a decree of foreclosure of his mortgage, for $2300.

McNulty and his wife were not in wrongful possession of the property; they were not trespassers or intruders; nor were they without interest in the premises. The wife had her one-third interest in the property, and she was the natural guardian of her children, entitled to the other two-thirds; and they were then living with and being supported by their mother and her husband.

In 2 *Story Eq. Juris.*, sec. 1234, it is laid down as a settled doctrine of equity, that there is a lien resulting to a joint owner of any real estate, *or other joint property*, "from repairs and improvements made upon such property for the joint benefit, and for disbursements touching the same. This lien sometimes arises from a contract, express or implied, between the parties, and sometimes it is created by Courts of equity, upon mere principles of general justice, especially where any relief is sought by the party, who ought to pay his proportion of the money expended in such repairs and improvements; for, in such cases, the maxim well applies: *Nemo debet locupletari ex alterius incommodo.*" And so, in sec. 1237, of the same author, it is said, "where a tenant for life, under a will, has gone on to finish improvements permanently beneficial to an estate, which were begun by the testator, Courts of equity have deemed the expenditure a charge,

for which the tenant is entitled to a lien." And in the
case to which the author refers, of *Hibbert vs. Cooke,* 1
*Sim. & Stu.,* 552, the Vice-Chancellor directed an inquiry
as to " whether it was for the benefit of all parties inter-
ested in the testator's estate that the mansion-house should
have been finished ; and if so, then to inquire what had
been properly expended by the widow in that respect,"
with a view of making the expenditure a charge. The
principle is a just and reasonable one, dependent upon no
mere technicality, and it would seem to be entirely appli-
cable to this case. That the improvements here made
were both beneficial and necessary to all concerned, can
admit of no doubt. Indeed the family could not have
been accommodated without them ; and the property as
left by the decedent Gavin could not have been disposed
of for enough to provide the widow and infant children
with a more commodious home.

As determined by the Orphans' Court in the opinion
delivered by them, and upon which the order of the 28th
of June, 1877, was passed, the husband of the deceased
administratrix of Gavin, in rendering the further account
required of him by the statute, from the 16th of July,
1869 to the time of the death of his wife, would only be
chargeable with the rents of the property *as it was left by
the decedent.* Upon the same principle, and for the same
reason, the accountability for the property itself should be
as it was left by the decedent, and not for the additions
and necessary improvements placed thereon by the money
and labor of the widow or her second husband, under the
circumstances disclosed in the case. In dealing with the
net proceeds of sale, therefore, there should be an equitable
apportionment made, between the value of the property as
it was left by the decedent, and the permanent beneficial
improvements placed thereon since his death, rating their
value and the enhancement of the property as at the time
of the sale. The improvements thus to be allowed for

must, of course, bear their just proportion of all taxes, insurance, and other charges and expenses, assessed or paid upon the basis of the improved condition of the property; and after all proper deductions, made upon fair and just principles of accounting, from the value of the improvements thus ascertained, and the one-third interest to which Mrs. McNulty was entitled as the widow of the deceased John Gavin, (to which those amounts are subject,) the balance, whatever that may be, will be the extent of the interest of the mortgagee in the premises; and that amount he should receive from the proceeds of sale. In the sale made under the decree of foreclosure, of course, no other or greater interest was disposed of than was conveyed or assigned by the mortgage.

This settlement may all be effected in the Orphans' Court, or the present bill may be retained to enforce the rights of the parties as herein determined.

The decree appealed from will be reversed, the injunction dissolved, and the cause remanded.

> *Decree reversed, and*
> *cause remanded.*

(Decided 16th March, 1881.)