# CIRCUIT COURT OF BALTIMORE CITY

------

Filed April 18, 1901.

------

WOOLLEN ET AL.
VS.
STUMP ET AL.

------

*W. Cabell Bruce* and *Sadtler & Sadtler* for petitioners.

*William A. Fisher, D. K. Este Fisher, Slingluff & Slingluff* and *John I. Yellott* for respondents.

RITCHIE, J.—

This petition of the trustees brings again before the Court for construction the will of the late Samuel Brady, Sr.

The questions now raised involve the the construction of the twelfth clause, and particularly the disposition by the trustees appointed thereunder, of the proceeds of sales made and to be made by them of the property therein mentioned.

The questions determined under the original bill, filed in 1893 for a construction of this will, related chiefly to other clauses of the will, though the twelfth clause was to some extent involved and construed. See Brady vs. Brady, 78 Md. 461.

The questions then raised and determined, so far as they arose under the twelfth clause, are not mentioned specifically nor discussed in the opinion of the Court of Appeals, the Court simply stating in general terms that they had

been carefully examined, and that the decree of the lower Court as to them would be affirmed. For the rulings thus affirmed it is necessary therefore to look to the decree below.

Nor was any opinion filed by the lower Court, so that, in passing on the questions now raised, we have not the benefit of such light as might have been thrown on them, by a statement of the reasons which influenced either the lower Court or the Court of Appeals in construing this clause, so far as it was then construed.

The testator executed his will in 1862 and died in 1871; after devising the property now in question by previous clauses, he by the twelfth clause appointed trustees to sell or lease the same, but they were not to sell until after the end of seven years from the death of his widow; she did not die until 1892, and now when this clause comes into full operation, and a fuller construction of it becomes necessary, we find that its terms are somewhat obscure, and that the existing conditions are such as the testator probably did not contemplate.

But by considering his reasons for inserting the twelfth clause, as therein expressed, together with the whole will, and particularly with the preceding clauses by which he specifically devised the property which, by this clause, he authorized the trustees to lease or sell, I think his intention is sufficiently manifest.

When Samuel Brady made his will in 1862 he had eight children living. He bequeathed to his son, Benjamin, a pecuniary legacy, which was to be in full of his entire interest in his estate, and Benjamin has no concern in the questions now raised.

At the time of his death in 1871, the testator left surviving him his widow and six children besides Benjamin, Jefferson having meanwhile died, unmarried and without issue. Of these six children Thomas S., Mrs. Woollen and Mrs. Sadtler are now living, and John, Samuel, junior, and Mrs. Naylor have died, each of them leaving children who are now living.

The testator left his entire estate to his wife for life, and after her death devised certain life estates to all of his children except Benjamin.

Subject to the life estate of his wife, he devised life estates in the following

tracts of land, or in the equivalents of the rents and profits therefrom, in case of sale or lease under the twelfth clause, as follows, viz: to John, in a tract of eight acres, being part of the land on the York road and Huntingdon avenue; to trustees for Jefferson, in the Market Garden farm, also part of the land last mentioned; and to Thomas in the Hillen road farm and wood lot on Kirk's lane.

The remainders in the above tracts, in the case of John and Thomas respectively, were devised to "his heirs-at-law, their heirs and assigns forever;" and, in the case of Jefferson, in trust for his children, if he left any, and their heirs-at-law and assigns forever.

By the twelfth clause the testator appointed his sons, John and Samuel, trustees, with power as aforesaid to sell or lease the several tracts just mentioned as having been devised for life to John and Samuel and to trustees for Jefferson, and to dispose of the proceeds as therein directed.

The trustees now have in hand or are about to receive $24,394.34 as the proceeds of the sale of the Hillen road farm, and also $5,495.04 as the balance of proceeds (inclusive of some interest), from the sale of a part of the Market Garden farm (with accruing interest thereon), and a ground rent of $120 under a ninety-nine year lease executed by former trustees of another part of this farm, together with $1,-176.84 of ground rent collected, and are about to sell the rest of the property mentioned in this clause.

The question now is, what are they to do with the proceeds of sale, with this ground rent, with rent collected, and interest collected or to be collected on the proceeds of sale of part of the Market Garden farm?

Under the fifth clause of the will, the Hillen road farm and the wood lot, are devised as follows, viz:

"I do give and bequeath unto my son, Thomas Sargeant Brady, the uses, rents, issues and profits of my Hillen road farm, and the wood lot lying on Kirk's road, between the York and Hillen roads; to have, hold, use and enjoy the same until it shall have been disposed of in accordance with the provisions of this will hereinafter expressed, when he shall have, and I do hereby give and bequeath unto him,

for and during his natural life, a full equivalent for said uses, rents, issues and profits, to be paid out of the invested proceeds of such portions of my estate as is herein provided to be sold or leased; and at the death of the said Thomas I give and bequeath the same to his heirs-at-law, their heirs and assigns forever, also with the said exception." (The exception excludes Benjamin from any interest as a possible heir of Thomas.)

Under the third clause the tract of eight acres is devised to John for life, and then to his heirs, etc., in the same terms in all respects as is the Hillen road farm left to Thomas, and under the tenth clause the Market Garden farm was left to the trustees for the benefit of Jefferson for life and then over, in substantially the same terms, so far as they relate to the question of the duration of the trust under the twelfth clause.

The twelfth clause is as follows: "And because it appears to me that the value of my lands, and particularly those nearest the city, will increase, and that all my children would be benefited by a judicious disposal of the same, I do hereby constitute and appoint my two sons, John W. S. Brady and Samuel Brady, Jr., trustees, with power to sell, lease and dispose of, and convey the land on the York road and Huntingdon avenue, the Hillen road farm and the wood lot on Kirk's road whenever it shall appear to them most judicious so to do, provided that they shall not sell any of the same until seven years after the death of their mother; but portions of it may be leased when they think it is best to do so; and in the event of a sale or sales of the same, or any part thereof, they are hereby directed to invest the proceeds thereof in real estate, the rents of which, as well as the rents of such portions of the same as may be leased, shall (after compensating my said sons John W. S. Brady, Jefferson Brady and Thomas Brady, for the rents, issues and profits of which they or either of them, shall by such leasing or selling have been deprived) be equally divided among my said children as part and parcel of their respective life estates, taking the same direction and subject to the same provisions during their lives respectively which the shares or portions of my estate hereinbefore allotted to them respectively shall have

taken and may be subject to, and in the event of the death of either of my said children, the portion to which he or she would have been entitled to go to and vest in their heirs at law, forever, my said son Benjamin, as before stated, not to be included in this division."

Although there is no devise of these lands to the trustees in this clause, nor any technical terms creating a trust, it is conceded by all parties that, in view of the powers devised, a trust was created in respect to the life estates in any ground rent created on, and in the invested proceeds from sales of, the property mentioned therein, and the chief question raised is as to the status of the interests of the children or heirs-at-law of the life tenants. As I understand it, there is nothing in the decree heretofore passed which determines this question.

As stated, John, Samuel, junior, and Mrs. Naylor, who are dead, each left children now living, and, as touching the duration of the trust, the controversy now is over the question, whether or not any trust was created by this clause as to these grandchildren, or as to the children, or heirs-at-law, of any other child that may hereafter die.

I will hereafter for convenience refer to grandchildren as including whomsoever the heirs-at-law may be.

The construction of this clause by the trustees is that after sales or leases have been made by them, their active duties begin, and the trust created continues as to the whole estate leased or sold, until the death of the last surviving child of the testator. On the other hand it is contended that the trust created ceased pro tanto as each of the three deceased children died, and will cease pro tanto as each of the three now surviving children may die, that is to say, there is no trust as to grandchildren.

To apply these respective constructions, take, for instance, the proceeds of the Hillen road farm, Thomas, who has the life interest, still surviving. The view of the trustees is that they must invest the entire proceeds of sale; then, out of the rents therefrom, pay over to Thomas during his life his equivalent, and divide the balance of such rents as they accrue from time to time among the surviving children of the testator, and the children of the

deceased children and when Thomas dies, they will (unless he should be the last survivor) continue to hold the share of his children in trust, and so on until the death of the last surviving child of the testator, when their share will vest in possession and the trust will be executed.

The other construction set up is that, as to the children of the three deceased children of the testator, there is no trust; that their several interests in the proceeds over and above the equivalent to be provided for Thomas, have vested absolutely, and they are now entitled to receive the same discharged of any trust.

Or taking the case of John, who is now dead, his children claim that when the eight acres left to him for life are sold, they will be entitled to receive at once, discharged of any trust, their equivalent and their interest in the surplus.

Under the true construction of the twelfth clause there is, in my judgment, no trust created as to the interests of grandchildren, and the trust created ceased pro tanto as each of the deceased children died; and will hereafter cease pro tanto as each surviving child may die.

It is to be noted in the first place that by the ninth clause the testator devised a small portion of his property to trustees in trust to pay the rents and profits to three of his children in equal shares, and he provided that, on the death of either of them, his or her share of such rents should be divided among his or her heirs, until the third and last life estate shall have expired, when the property should be sold and the proceeds divided absolutely.

It thus appears that when the testator intended to create a trust for grandchildren, he expressed his purpose in clear and unequivocal terms.

In equally clear language he expresses the intention in every other devise, that the interests of grandchildren shall vest free from any trust. That such was his intention as therein expressed is so apparent that no one questions it, and it is only by giving to the twelfth clause a construction repugnant to the terms of the preceding specific devises, that any trust can be created as to grandchildren.

In every interest, (saving the unimportant departure in the ninth clause),

including both the property mentioned in this clause and all his other real estate, the limitation over on the death of each child, is to his or her "heirs-at-law, their heirs and assigns forever," except in the case of Jefferson, and there it is to his children, if any, their heirs and assigns forever.

And in the twelfth clause, which contains this power of sale, after providing for the equivalents, which, in express terms, by previous clauses, vest in possession in the heirs-at-law of John and Thomas as each dies, and in the children of Jefferson, if any, he further provides that the interests of his children in the surplus rents from invested proceeds, shall be "part and parcel of their respective life estates, taking the same direction and subject to the same provisions, during their lives respectively," as provided in respect to their several life estates; and that on the death of any one of his children, his or her portion is to "go to and vest in" his or her heirs-at-law forever.

To construe this clause as creating a trust in respect to the shares of the grandchildren would be repugnant to the terms of the previous clauses referred to, which devise the property in question, and contrary to the general intention clearly manifested throughout his will in respect to grandchildren (except as slightly modified in the ninth clause), and contrary also, I think, to the terms of the twelfth clause itself.

The provision made for investing the proceeds of sale and for providing the equivalents out of the rents of such investments, and dividing the surplus rents, was intended to operate only as respects the several life estates. Its operation so far is within the purpose of the testator, but what purpose of his is served by extending its operation to the interests of grandchildren?

If the interests of the children of these deceased children, in the proceeds of sale of any property mentioned in this clause, vested or will vest free from any trust when the same was or may be sold, as they have vested or will vest, if I am correct in my construction of this clause, why are they not entitled to receive the same at once?

To say that, nevertheless, the trustees must follow literally the terms of

this clause, and invest their shares of these proceeds, although after that has been done, these grandchildren would then be entitled absolutely to the invested proceeds, and the trust would then be executed as to them, is to require something altogether unnecessary, and would be to apply the strict letter of this clause to a situation to which the testator had no intention that it should apply. The devise of absolute estates to the grandchildren show that it was not his intention that this provision should apply to them.

A further consideration is, that the duration of the trust is limited by the purpose of the testator in creating it. When it has served this purpose it ceases, and the estate of the trustee will not be carried further than the complete execution of the trust necessarily requires. Long vs. Long, 62 Md. 65.

The expressed purpose of the testator is that all his children except Benjamin should participate in the expected enhancement in value of this property. If the testator had simply directed the trustees to sell and apportion proceeds, no further trust would have arisen. But he directs the trustees to invest the proceeds, and out of the rents therefrom to provide for the equivalents and for each child's portion of the surplus, and from this duty of investing and the manner in which he directs that this apportionment shall be made, he manifests the subsidiary purpose that the life estates of his children in the invested proceeds should remain in the hands of the trustees, and it is thus only that any continuing trust at all arises.

But this subsidiary purpose relates in express terms to the life estates only, and there is nothing in his expressed or implied purposes which requires that the trust should be carried any further.

So far as the interests of the grandchildren in property, other than that mentioned in this clause, are concerned, they clearly were not left in trust.

No reason is suggested why the testator should have intended that the interests of the grandchildren who receive equivalents should remain in trust, while the interests of the other grandchildren, under the special devises in which they are concerned, have vested, or will vest, free from any

trust; nor why the interests of grandchildren in the surplus proceeds should be in trust, when the rest of their respective estates vest free from any trust.

And again, the construction that there is a trust as to grandchildren involves the necessity of indicating a time when such trust will terminate. On the theory of the trustees, this time is the date of the death of the last surviving child of the testator. But I can see no reason why this event should be taken as fixing the duration of such trust.

The argument is that the trust ceases then because it was the intention of the testator that his children during their lives should receive the benefit of this clause. This might be a reason for holding that the power of sale would lapse, if not fully exercised at the death of the last child, but it furnishes no reason why any such trust should then cease. Nor, if there is any such trust, can I see any period or event which fixes its termination.

This case is very different from that of Abell vs. Abell, 75 Md. 44, upon which the trustees chiefly rely. In that case it was held that the powers and duties of the trustees related to the entire trust estate as a whole; that the whole was liable for charges on any part, and that the powers given to charge, encumber, sell or lease could not be exercised unless the entire estate was kept in the hands of the trustees until the death of the last surviving daughter.

But in this case there is no sort of relation between the several pieces of property mentioned. They are subject to the common power of sale or lease, but that is all. One parcel is not subject to the charges of another; each is a separate and distinct subject matter of sale, and the powers of the trustees in respect to sales, investments, equivalents and division of surplus, can be fully exercised as to each separate parcel. In fact, they must be so exercised, because, as each parcel is sold, it is only out of the proceeds of such parcel that the equivalent is to be provided and the division of surplus made.

I can see no reason why the interests of the children of deceased children cannot just as well vest now, free from any trust, as on the death of the last surviving child of the testator.

For the reasons stated, the true construction of this clause, in my opinion, is that it creates no trust in respect to the interests of grandchildren; as to the children of the deceased children, their interests in the proceeds of such property as has been sold or leased, have vested free from any trust; a trust exists as to the interests of the surviving children of the testator in such proceeds, but it will cease pro tanto as each one dies, and the interest of his or her children will then vest free from any trust.

As to the property not yet sold, when the wood lot is sold, the interests of Thomas and the other surviving children in the proceeds will remain in trust, the trust ceasing pro tanto as each now surviving child may die; and the interests of the children of the testator's deceased children in such proceeds will vest free from any trust.

The eight acres in which John had a life interest have now vested absolutely in his children, subject only to the power of sale and to the rights of others in the proceeds when sold; when they are sold his children, and the children of the other deceased children of the testator, will be entitled to their interests in the proceeds free from any trust, the interest therein of the surviving children of the testator remaining in trust until they respectively die.

The disposition of the proceeds of the land left in trust for Jefferson during his life, will be considered later on.

We come now to consider the equivalent to which Thomas is entitled by reason of the sale of the Hillen road farm, his right to an equivalent when the wood lot is sold, and the equivalent to which the children of John will be entitled when the eight acre tract is sold; and also the question of the disposition of the surplus proceeds after equivalents have been provided for.

The matter of equivalents has been to a certain degree determined by the decree heretofore passed in this case and affirmed in Brady vs. Brady, 78 Md. 461. By the language of the will and the terms of the decree the basis of this equivalent are the rents, issues and profits of which one or the other has been or may be deprived by reason of the sale or lease, and it is settled by the decree that this means the net rents, issues and profits, and also that

the date for ascertaining such equivalent is the date of sale or lease.

Let us take first the Hillen road farm. When this farm was sold it was under rental for $300 a year, and this seems to have been about the rental from the time of the death of the testator until sale, but the net rental received when the farm was sold was only $60.01. This is the net rental of which Thomas has been deprived, and under the terms of the decree he will be entitled to receive for life from the invested proceeds as his equivalent, a clear annual income of the same amount, but no more. As he is to receive the full equivalent of a net rent, the equivalent should be net.

Next as to the wood lot. This rents now for $9.00 a month, about the same at which it rented when the testator died, but there are not now, and for many years past have not been, any net rents, issues or profits from this lot, and apparently none at any time since the testator died. Thomas will thus, if there should continue to be no net rental, not be deprived of any net rental, issues or profits, and under the decree will not be entitled to anything as an equivalent.

In Worthington vs. Hiss, 70 Md. 186 8, (a proceeding to recover from innocent bona fide purchasers the mesne profits for the occupancy of vacant unimproved city lots), the Court held that the plaintiffs could recover only such occupation rent as might fairly have been made by the defendants from property of such description during the period of ouster; that if such rent was not enough to pay taxes, the plaintiffs could recover nothing; that "it is not in the power of the Court to create rents and profits" for the benefit of the plaintiffs.

This ruling as to rents and profits seems to be applicable here.

At first blush it seems hard upon Thomas that he should receive so small an amount as his equivalent from the farm, and nothing from the wood lot; but the measure of his equivalent is fixed both by the will and the decree. If the interest left him by his father was small in one case, and nothing in the other, he nevertheless can claim only what was left him, and the Court cannot create rents and profits for his benefit.

Even if it were possible to calculate the equivalent of something which he

has not lost, it would be contrary to the rights of others to make him an allowance greater than the income of which he has been deprived, or when he has been deprived of nothing.

And even if the words "rental value" could be imported into the will and decree, there is nothing to show that either piece of property has been rented for less than its rental value; nor is there any evidence to show that he enjoyed any uses, rents, issues or profits from either tract other than as above stated.

After providing for Thomas' equivalent for the net rental of $60.01, the trustees should pay over to the children of the three deceased children per stirpes three-sixths of the remaining proceeds from the farm, and three-sixths of the entire proceeds from the wood lot, the remaining three-sixths of each to be invested as directed for the benefit of the three surviving children for their lives respectively, and, as each one dies, one-sixth will vest in his or her children free from any trust.

The equivalent to which John's children will be entitled when the eight-acre tract is sold must now be determined. When the testator died this tract rented for about $600; for some years past it has been, and is now, rented for $480 a year, exclusive of the rent from the seven houses which were built thereon by John. The net rental, exclusive of these houses, is $277.24, and the children of John, if it should still be the same, will be entitled to receive when this tract is sold, a sum equal to the value of this net rental. This sum may be ascertained by testimony.

John's children will not be entitled to receive any equivalent for the rentals of the seven houses, which he erected out of his own means on this land, in the improvement of the same— they are not rentals such as are contemplated by the will or decree—but it is only fair and equitable that his children should receive from the proceeds of sale the present value of these houses, built in good faith at their father's expense, and to this they will be entitled.

Long vs. Long, 62 Md. 74.

Gavin vs. Garling, 55 Md. 537.

McLaughlin vs. Barnum, 31 Md. 453.

Williams vs. Harlan, 88 Md. 5.

After John's children have received their equivalent, the surplus proceeds should be disposed of as indicated in the case of the Hillen road farm.

The disposition of the proceeds from the Market Garden farm and of the ground rent on part of it, with interest and ground rent collected, remains to be considered. This farm by the tenth clause was left to trustees for the benefit of Jefferson for life, and in case he should marry, and dying leave issue, then "in trust for the children of the said Jefferson and his heirs-at-law, their heirs and assigns forever," Jefferson being entitled to compensation like Thomas and John from the proceeds, when this tract should be leased or sold under the twelfth clause.

Jefferson died before his father, unmarried and leaving no issue, and there being no limitation over except in case of his marriage and leaving issue, the testator died intestate as to the remainder in this tract after the life estate of the widow, except so far as it is subject to the terms of the twelfth clause.

Consequently, with the exception of Benjamin, who was expressly excluded from all interest in his father's estate other than his legacy, and subject as aforesaid, the remainder in this farm vested in the children of the testator at his death.

But it thus vested subject to the twelfth clause, notwithstanding there is no effective limitation over in the tenth clause, because by the twelfth clause the testator expressly authorizes the lease or sale of this farm, and directs how the proceeds shall be disposed of.

After lease or the investment of the proceeds of sale, the equivalent for Jefferson was first to be provided for, and then the surplus rents were to be divided among the testator's children (excepting Benjamin), as part and parcel of their respective life estates, the portion of each one at his or her death to go to his or her heirs.

There being no equivalent to be provided for, the surviving children and the children of the deceased children are entitled to the entire proceeds of sales made or to be made, and to said ground rent, in the manner and estate determined by the twelfth clause, that is to say, three-sixths of such proceeds should be invested as directed for the

three surviving children for life, one of said sixths to vest, as each one dies, in his or her children free from any trust; and three-sixths of such proceeds should be paid over to the children per stirpes of each deceased child; and three-sixths of said ground rent are to be held for the three surviving children for life, to vest as above stated as each one dies, while the other three-sixths have now vested per stirpes, free from any trust, in the children· of the three deceased children.

The ground rent collected, together with such interest as has been or may be collected on the balance of proceeds from the sale of a part of Market Garden farm, being income, should be paid over absolutely, in the proportions indicated, to the surviving children, and to the personal representatives or children of the deceased children, as the case may be, except so far as the payments credited to the estate of the late trustee, John W. S. Brady, in the settlement had on account of the original purchase money received by him for part of the said farm, are chargeable to income. Payments made by him out of such proceeds that are so chargeable, should be deducted from the interest received from his estate before the same is distributed.