THOMAS J. HOGAN *vs.* MARY E. McMAHON.

*Demurrers in equity; to whole bill; effect of. Co-tenants; equitable lien; for paying off liens; repairs, etc.; sale to enforce; use and occupancy of property; ouster. Secret liens; third parties. Mortgages; strict foreclosure. Court of Appeals; opinion on points not strictly before it.*

A bill was filed by one co-tenant for the sale of property on the ground that it could not be divided; a cross-bill was filed by the other co-tenant, alleging that she had expended large sums, and paid off liens on the property, and that the complainant's interest in the same was much less in value than the sums so expended by her for which he was responsible. *Held*, that if the interest of the complainant (the appellant) was found to be less than the sum for which he was responsible, his interest should be decreed to be sold unless such sum due by him should be paid off in a reasonable time; but if his interest were worth more than the sum for which he was responsible, then the whole property should be sold, the proceeds to be applied first to pay off the liens, together with the taxes, expenses and costs of the sale.  pp. 204-205

If the lien for the sum due by the complainant (appellant) should be paid off, a sale should be decreed for the purpose of partition, since it was admitted that the property was not susceptible of division.  p. 205

In the cross-bill, the defendant (appellee) as part of the relief sought by the bill prayed that the amount of her expenditure upon the property, for which the complainant (appellant) was responsible, might be determined and declared a lien upon his interest, and a trustee appointed to convey his interest to her, unless such lien were paid within the time to be provided. *Held,* that the defendant (appellee) was entitled to have a lien declared for the amount so found to be due, but that she was not entitled to strict foreclosure.     p. 200

A tenant in common can not be held liable to his co-tenant for use and occupation of the common property unless there has been an ouster by his co-tenants.     p. 200

Tenants in common are jointly seized of the entire estate, and each one has an equal right of entry and possession; the possession of one is the possession of all, and an ouster will not be presumed from exclusive possession by one co-tenant.     p. 200

In order to avoid further litigation, the Court of Appeals will sometimes express its views on points in a case, although the same may not be before it technically.     p. 201

A co-tenant is entitled to contribution by the others for liens and encumbrances paid by him since the beginning of the tenancy, and for necessary repairs and improvements made with the assent of the other; and equity will create a lien as security for such demand upon the undivided shares of the other proprietors.     p. 202

Where the co-tenant has paid off a mortgage upon the common property, in the absence of some equity in favor of third persons, he is entitled to be subrogated to the rights of the mortgagee against the other co-tenants.     p. 203

Equity is careful to protect innocent third persons against secret liens, if they have acquired such rights in the property as would be affected by them.     p. 203

While a strict foreclosure of a mortgage may still be had in a proper case, such practice has, for the most part, been abandoned.     p. 204

A demurrer to a whole bill is properly overruled, if it applies to a part of the bill only.

*Decided February 23rd, 1911.*

Appeal from the Circuit Court of Baltimore City (NILES, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Allan C. Girdwood,* for the appellant.

*Charles R. Schirm,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant filed a bill in equity against the appellee for the sale of the property described therein, on the ground that a partition could not be made without loss and injury to the parties, who were tenants in common. The answer having been excepted to, an amended answer was filed, with leave of the Court, and a cross-bill by the appellee against the appellant was also filed. This appeal was taken from an order overruling a demurrer to the cross-bill.

The amended answer admitted the allegations of the bill but denied that the plaintiff was entitled to relief, because the appellee had expended over $1,200.00 for the permanent benefit, improvement and preservation of the property and the amount for which the plaintiff was alleged to be responsible was far in excess of the value of his interest in the property. The cross-bill alleges that on April 28th, 1897, Ellen Hogan, the mother of the appellant and the appellee, conveyed the property to them subject to an annual ground rent of $28.00, and subject, "to the operation of two mortgages from said Ellen Hogan to the Loyola Building Association of Baltimore City." It also alleges that Ellen Hogan lived with her said two children in the house erected on the lot

for about· twenty-one years prior to her death, which occurred
on May 3rd, 1907, and that after ·her death the appellant
continued to live with the appellee in the house until some-
time in 1906, "when of his own accord he left the same and
has not returned to live or sojourn therein although he has
never been denied free access thereto or the enjoyment thereof
by your oratrix." ·

It further charges that Ellen Hogan on July 7th, 1887,
mortgaged the lot to the Loyola Perpetual Building Associa-
tion for $375.00, which was released on October 31st, 1893,
and on that day she made another mortgage to that building
association for $250.00, which was subsequently increased to
the extent of $125.00, which latter mortgage was released on
April 13, 1903; that the appellee paid off $645.13, with
interest, of said two mortgages at the request of Ellen Hogan
and with the knowledge and assent of the appellant, and that
with his knowledge and assent she also paid ground rent,
amounting to $350.00, State and city taxes amounting to
$196.84; also insurance, recording and other fees connected
with the mortgages· and releases, water rent, $15.00 for paint-
ing the house, and $30.00 for papering five rooms and the
hallway.

It then alleges that the appellant is liable for one-half of
the amount she has so paid, and that the value of his interest
is much less than the money expended by her for which he
is responsible, and that a sale of the property in accordance
with his bill ·would entail great expense and hardship upon
her and would in no wise enure to his benefit. The prayers
of the cross-bill are: (1) that there be a determination by
the Court of the amount of expenditures made by her for the
permanent benefit, improvement and preservation of the
property; (2) that she be decreed to have a lien upon the
interest of the appellant to the extent of the amount paid by
her and for which he may be found to be liable; (3) that he
be required to pay her such amount as may be so found before
any further action is taken on his bill, "and in default of
such payment within such time as may be prescribed by this

Court that a trustee may be appointed to convey to your, oratrix the interest of the said Hogan in and to said property"; and (4) for general relief.

It is admitted by the answer to the original bill that the appellant and appellee are tenants in common, and that the appellee lived with her mother until the latter's death, but we do not find anything in the cross-bill to justify the statement made in the appellant's brief, that the appellee had lived in the house for over eighteen years, paying the expenses as they accrued, *"and enjoying the exclusive use of the same."* On the contrary, it alleges that the appellant continued to live with the appellee in said house until some time in the year 1906, when he left of his own accord, and has never been denied free access thereto or the enjoyment thereof, as stated above. The demurrer to the cross-bill admits that allegation, and we must assume it to be so. There is nothing on the face of the cross-bill for which it can be said that there was an ouster, and the rule in Maryland is that "one tenant in common cannot be held liable to his co-tenants for use and occupation of the common property, unless there has been an ouster of his co-tenants." *Israel* v. *Israel,* 30 Md. 120. The Court distinguished that case from Ridgely v. *Bond,* 18 Md. 433, by pointing out that in the latter Ridgely had been in exclusive possession of the premises and claimed title thereto, and said: "Here was an exclusive possession by Ridgely, accompanied by a receipt of the whole rents and profits, with a claim of title to the whole property, which was a clear ouster of his co-tenants; and upon the sale of the property a decree very properly was passed against him for an account of the rents and profits received, upon the well-established principle, that where one tenant in common ousts his co-tenants and receives the rents and profits he shall be held to account to the others for their proportion." In *Israel* v. *Israel,* the Court went on to say that, "While it seems to be well settled that where one tenant in common acts as bailiff for the other, or is in the exclusive perception of the rents of the common property, he will be held to account"—citing

*Statute of 4 Anne,* Chap. 16, sec. 27, and a number of cases—
"yet we have found no case in which a tenant in common,
who has not ousted his co-tenant, has been held accountable
for use and occupation, except the three cases, before referred
to, in *McMillan's Chan. Rep."* The Court then declined to
follow those three cases.

In *McLaughlin* v. *McLaughlin,* 80 Md. 115, a bill was
filed for the sale of property for purposes of partition and
for an accounting of rents and profits. We expressly refused
to allow the accounting for use and occupation, the Court,
through JUDGE BRISCOE, saying: "It is well settled that one
tenant in common who occupies the common property can not
be held liable to his co-tenants for use and occupation unless
there has been an actual ouster of his co-tenants. *Israel* v.
*Israel and Wife,* 30 Md. 123. Tenants in common are
jointly seized of the entire estate, and each has an equal right
of entry and possession; the possession of one is the posses-
sion of all, and ouster will not be presumed from exclusive
possession of one co-tenant; but actual ouster must be proved;
there is no constructive ouster among tenants in common, but
positive acts of hostility must be shown to constitute disseisin.
*Van Bibber's Lessee* v. *Ferdinand Frazier,* 17 Md. 436."

In such cases as *Tongue* v. *Nutwell,* 31 Md. 302, and
*Worthington* v. *Hiss,* 70 Md. 172, relied on by the appellant,
the defendants claimed title, just as was done in *Ridgely* v.
*Bond,* and there was an ouster. *Tongue* v. *Nutwell* was an
action for mesne profits after recovery in ejectment, and in
*Worthington* v. *Hiss* the title of the complainant was denied.
In *McLaughlin* v. *Barnum,* 31 Md. 425, and similar cases,
improvements were made under the belief that the one in
possession was the absolute owner and under the circum-
stances the one in possession who was allowed for the
improvements was also required to account for rents and
profits. But, as we have already pointed out, the appellee
expressly admitted the allegations of the original bill, which
distinctly alleged that the property was conveyed in 1897 to
her and the appellant, as tenants in common. We have seen

what the allegations in the cross-bill are, and indeed the whole theory of that cross-bill is that they are tenants in common, and hence the only accounting that can be allowed is such as is permissible between tenants in common, recognizing the rights of each other. As shown by the quotations from *Israel* v. *Israel* and *McLaughlin* v. *McLaughlin,* there can be no recovery for use and occupation by one such co-tenant against another. This question was not distinctly raised by the demurrer to the cross-bill, as there is nothing in that bill which would necessarily exclude an accounting for use and occupation, if the appellant was entitled to it; but, inasmuch as it was fully argued, we concluded to express our views on the subject to avoid further litigation. We are of the opinion that the cross-bill does not show an ouster, and unless the facts are proven to be wholly different from those therein alleged the appellant cannot require the appellee to account for use and occupation. Although it is not necessary to cite authorities outside of this State, as the question is definitely and thoroughly established here, by a reference to 17 *Am. and Eng. Ency, of Law* (2nd Ed.) 690, where many cases are cited, it will be seen that the above is the prevailing doctrine in England and in the United States.

The cross-bill is not as clear as it might be as to what two mortgages are referred to as having been paid by the appellee, and the mortgages are not in the Record, but we will assume that they are those for the $250.00 and $125.00, respectively, which were given after the original one for $375.00 was released. If any part of the $645.15 alleged to have been paid by the appellee on two mortgages was paid on the one released in 1893, such part should not be allowed her, as that was released before she and the appellant became tenants in common. But there can be no doubt that the appellee is entitled to contribution by the appellant for liens and incumbrances paid by her since they became tenants in common. 17 *Am. and Eng. Ency. of Law,* 685; 7 Ibid. 353, and, as shown by the last cited authority, that statement includes mortgages, taxes and ground-rent. See

also, *Parsons* v. *Urie,* 104 Md. 238, and the annotations of
that case in 10 *Am. and Eng. An. Cases,* 278; *Darcey* v.
*Bayne,* 105 Md. 365, and other Maryland cases reflecting
on the subject. The general rule also is that one co-tenant
is entitled to contribution from another for necessary repairs
and improvements made with the assent of the other. 7
*Am. and Eng. Ency. of Law,* 356 and 357. It is alleged in
the cross-bill that the expenditures were made with the assent
of the appellant, and it will, therefore, be unnecessary to dis-
cuss the question whether the papering alleged to have been
done would be excluded by what is said in *Israel* v. *Israel*
on that subject. Indeed, we do not understand the appellant
to contend that the appellee is not entitled to be compensated
for the expenditures alleged to have been made by her,
although he only admits them for the purpose of the
demurrer, and will not be precluded from showing by the
testimony that some of them are not properly chargeable,
if such be the fact.

The next question to be considered is whether the appellee
is entitled to a lien for such money as may be found to be
due her. In *William* v. *Harlan,* 88 Md. 1, it was said:
"There can be no question that as between Wm. H. Green-
way and his co-tenants he would be entitled to a lien for
the amount expended by him on improvements and repairs
made upon the joint property with their knowledge or at
their request or in good faith for the benefit of all. This
doctrine is fully settled by all of the authorities." JUDGE
FOWLER quoted from *Pomeroy's Eq. Juris.,* section 1239,
that, "When two or more persons are joint-owners of real or
other property, and one of them in good faith for the joint
benefit makes repairs and improvements upon the property
which are permanent, and add a permanent value to the
entire state, equity may not only give him a claim for con-
tribution against the other joint-owners with respect to their
proportional shares of the amount thus expended, but may
also *create a lien* as security for such demand upon the undi-
vided shares of the other proprietors." He cited amongst

other authorities 13 *Am. & Eng. Ency. of Law* (1st. Ed);
602, and *Gavin v. Carling,* .55 Md. 530. In the *Ency. of
Law* referred to is this statement: "Where a tenant in com-
mon discharges a mortgage upon the joint property, equity
treats him as an assignee of the mortgage as against his
co-tenants interest in the property, and this though no actual
assignment is made." This Court in *Flack* v. *Gosnell,* 76
Md. 90, while denying a lien in favor of rents due by one
co-tenant to another, indicated that it could be allowed for
repairs and improvements.

The reasoning of the decision in *Parsons .v. Urie, supra,*
is certainly in favor of declaring such a lien for incum-
brances paid. It was there held, quoting from the syllabus,
that, "When one or more of several tenants is common pays
the joint mortgage debt on their land, he is entitled to have
the mortgage kept alive so as to secure reimbursements of
the amount paid from his co-tenants." The appellee could
have taken an assignment of these mortgages, and that would
have been the better course to have pursued, but, as between
her and the appellant, there can be no reason why the lien
cannot now be declared. If an innocent third party was
shown to be affected, another question might arise, as Courts
of equity should be careful to protect such persons against
secret liens, if they have acquired such rights in the prop-
erty as would be affected by them, but in the absence of
some equity in favor of a third person, which would forbid
that course, the appellee is entitled to be subrogated to the
rights of the mortgagee against the appellant. It was held
in *Look* v. *Horn,* 97 Me. 283, 54 At. 725, that, "Where a
mortgage is discharged on payment made by one of the
joint mortgagors, or his successors in interest, it may be
treated in equity as still subsisting for the protection of the
party making payment, or the delinquent's share in the
mortgaged premises may be regarded as subject to a lien
for the amount paid on the mortgage for his benefit."

These authorities and others which we might cite are
sufficient to show that the prayer to have a lien declared for

the amount paid by the appellee for which the appellant is liable is not demurrable—although, as indicated above, the Court should be careful not to permit the interests of third parties to suffer and should see that the claims of the appellee are properly established and are such as can be made liens in accordance with what we have said above.

It only remains for us to consider the third prayer of the cross-bill. That presents a somewhat novel proposition. No authority was cited by the appellee in support of that prayer, and we are not satisfied that it could safely be granted. If the appellee had taken an assignment of the mortgages, the established practice in this State would have required her to have sold the premises. In speaking of strict foreclosures, it was said in *Hanover Fire Ins. Co.* v. *Brown,* 77 Md. 64, that, "The decree for foreclosure has disappeared from our practice, being entirely superseded by the more convenient decree for sale, which is, however, sometimes, though inaccurately, called a foreclosure decree." We do not understand that it was intended to be said that there could not be a strict foreclosure in a proper case, and such practice has undoubtedly for the most part been abandoned. Then, if proceedings had been taken for the collection of the taxes, a sale of the property would have been the method pursued, and we are not willing to adopt such a summary method of reimbursing the appellee as directing a conveyance of the appellant's interest on default of his payment. A sale may cause some loss to the appellee if the proeprty does not realize a sufficient amount to pay what is shown to be due her, but property sometimes brings more at public sale than is anticipated, and at any rate that method of enforcing liens on real estate is now so well established in this State that it should not be departed from in cases of this character. To have a lien declared and enforced in the usual way is as much as one who has not made the claim a matter of record can properly ask.

If the lower Court is satisfied from the testimony to be offered that the amount found to be due the appellee by the appellant is more than his interest in the property is worth,

it can decree a sale of that interest, unless the lien is paid within such reasonable time as may be prescribed by the decree, for it would not be just to the appellee to unnecessarily sell her interest, but if it be shown that his half interest is worth more or may bring more than the amount ascertained to be due by him to the appellee, if the whole property is sold, then the decree should, after declaring the lien for the entire amount, authorize the sale of the whole property, the proceeds to be first applied to the payment of that lien, after expenses incident to the sale, taxes and costs are paid. The prayer for general relief would authorize such a decree. Of course, if the amount ascertained to be due, for which a lien is declared, is paid by the appellant as prescribed in the decree, a sale should be decreed for the purposes of partition, as we understand the answer of the appellee to the original bill to admit that the property can not be divided.

As the demurrer was to the whole bill, and not to a part only, it was properly overruled, notwithstanding what we have said about the third prayer. *Miller's Eq. Proc.* 173. It follows that the order appealed from must be affirmed.

> *Order affirmed and cause remanded, the appellant to pay the costs in this Court and those in the lower Court to abide the final result.*