The PRESIDENT, DIRECTORS and COMPANY of the FARMERS' BANK OF MARYLAND, GEO. W. DU-VALL, and others, *vs.* DANIEL CLARKE, Administrator, *d. b. n.* of JOHN CONTEE, and others. SAME *vs.* SAME.

*Sales under a Decree in Equity—Vacation of Sales—Substitution of one person as Purchaser, in place of another.*

A sale under a decree of a Court of Equity, should not be vacated and set aside, for causes that the parties interested might, with reasonable diligence and effort, have obviated. Every intendment will be made to support such a sale; and it is only where the Court can see that injustice will be done by the ratification of a sale, to a party not in default, that it will interfere to prevent it.

A sale *bona fide* made, will not be set aside because of a diversity of opinion among witnesses as to the value of the property, unless it appear that the price reported is so grossly inadequate, as to do injury to parties not in default.

The ratification or rejection of a sale under a decree in Equity, must depend on the state of facts existing at its date, and not on subsequent events. As the purchaser is made to bear all loss by depreciation subsequent to the time of sale, he should be entitled to all profit that he may be able to make of the property after that time.

A Court of Equity will allow the substitution of one person in place of another, as purchaser of property, sold under its decree, having a proper regard to his ability to comply with the terms of sale.

APPEALS from the Circuit Court for Prince George's County, in Equity.

The bills of complaint in this cause were filed by certain creditors of John Contee, deceased, the first on the 13th, and the latter on the 30th of June, 1864, alleging the insufficiency of the personal estate for the payment of his debts, and praying for a decree for the sale of the real estate. The two cases thus instituted were proceeded with, respectively, until the

13th of June, 1865, when, by an order of the Circuit Court, they were consolidated. On the 11th of July, following, a decree was passed for the sale of the real estate and Thomas G. Pratt and Daniel Clarke were appointed trustees to make sale of that portion of the real estate called and known as "Pleasant Prospect;" and Richard B. B. Chew and Daniel Clarke were appointed to make sale of the residue. On the 26th of October, 1865, the trustees, Pratt and Clarke, reported, "that after giving notice of the time, place, manner and terms of sale, by advertisement in the "Marlboro' Gazette" and "Prince Georgian," two newspapers printed in Upper Marlboro', and in the National Intelligencer, a paper published in Washington city, and the Baltimore Sun, a newspaper published in Baltimore city, for more than three successive weeks before the day of sale, and by handbills extensively circulated throughout Prince George's county, they did pursuant to said notice attend on the premises, on Wednesday, the 20th day of September, 1865, at twelve o'clock, M., and then and there offered the real estate known as "Pleasant Prospect," at public sale, when no bid was made for the same. They subsequently, after giving notice as required by said decree, of the time, place, manner and terms of sale, by advertisement in the "Marlboro' Gazette" and "Prince Georgian," two newspapers printed in Upper Marlboro', for more than three successive weeks before the day of sale, did, pursuant to said notice, attend on the premises, &c., on Tuesday, the 24th day of October, 1865, at twelve o'clock, M., and then and there proceeded to sell the said real estate; they offered the same at public sale to the highest bidder, and sold it to Thomas R. Wilson, of Washington City, he being then and there the highest bidder therefor, for the sum of forty-five dollars per acre." On the day of the filing of the report of the sale, the order of ratification *nisi* was passed. Prior to the final ratification of the sale, the appellants, filed exceptions thereto, which will be found substantially set forth in the opinion of this Court, and also prayed that the trustees

and the purchaser might answer the same. The trustees answered under oath, stating that they deemed it unnecessary to incur the additional expense of advertisement in papers outside of the county; that at the second sale there was a larger attendance of persons residing outside of the county, than at the first, and that there was a full attendance of the neighboring land owners; they denied that the land was not fairly put into the market, and that there was not proper competition for the same; that their judgment of the actual value of the land was based upon the market value of the same, and that they had not been able, since the sale, to hear of any *bona fide* purchaser who was willing to give more than forty-five dollars per acre, although one of the trustees stated to the creditors and others, that he would report such offer to the Court, if any such should be made prior to the day fixed for ratification. They denied all knowledge of the matters and things alleged as having occurred between Moore and Wilson. The purchaser also answered under oath denying that any understanding was had with Moore by which he was induced not to bid for the land, and also that he had any collusion with Moore, or any one else in regard to the sale, and claimed his rights as purchaser, having been finally, and *bona fide*, the highest bidder. On the 23d of November, 1865, the Court passed an order authorizing the parties to take proof touching the matter of the exceptions, before a justice of the peace, and various depositions were taken thereunder. The Court overruled the exceptions, and by its order of the 28th of December, 1865, finally ratified and confirmed the sale. From this order an appeal was taken, which constitutes the first appeal.

After the ratification of the sale by the Court, Jonathan T. Walker, on the 19th of February, 1866, filed a petition under oath, showing that he had become the purchaser of all the right, title and interest of Wilson, at the same price at which it was sold to him, alleging his readiness to comply with the terms of sale, and asking for an order substituting him as

purchaser. Annexed to the petition was a letter addressed to the trustees, by Wilson, who stated that he had disposed of his interest to Walker, and requested that they would make the necessary application to the Court to have Walker substituted as purchaser. Objection was made by the appellants to the passage of an order substituting Walker as purchaser.

Firstly. Because the petition was filed at the instance of Walker, the assignee of Wilson.

Secondly. Because the application ought to have been made by the original purchaser, containing an averment, that it was a re-sale upon the same terms at which he purchased, and if he received any premium or advance on such re-sale, the amount thereof should be stated and the Court should direct that it be brought into Court for the benefit of the estate and the creditors.

Thirdly. Because the passage of the order would be irregular, the petition having been filed by a person not a party to the suit, and there being an appeal pending from the order of the Court overruling the exceptions filed to the ratification of the sale to Wilson, by the respondents.

After argument, on the 21st of February, 1866, the Court passed an order, substituting Walker as purchaser in place of Wilson. From this order an appeal was taken, which constitutes the second appeal.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*Alexander B. Hagner* and *A. Randall*, for the appellants:

The objections taken by the appellants to the ratification of the sale of "Pleasant Prospect" ought to have been sustained by the Court below, and the sale set aside:

Firstly. The notice of the sale as given by the trustees was not sufficient, nor did it accord with the requirements of the decree.

Farmers' Bank of Md., *et al.*, *vs.* Clarke, Adm'r, *d. b. n.*, *et al.*

Because the advertisement of the sale of the land by the trustees did not correctly refer to the decree, and the cases under which they were authorized to sell; they referred to only *one* of the two consolidated cases, and the public were not informed that the parties to the other case were bound by such sale.

And also, because other notice than that inserted in two of the newspapers printed in Upper Marlboro', was required by the decree; and further, because the advertisement did not state that interest was to be paid upon $15,000, from the day of sale, "until the said sum was paid," nor that "*the payment* thereof, was to be secured by the bonds of the purchaser, with surety or sureties to be approved by the trustees," as required by the decree.

Secondly. The notice of the day of sale was not proper, nor was the land fairly put into market,—there was no fair competition.

Because the notice stated that the land was to be sold on Tuesday, the 24th October, "*if fair, if not, on the next fair day thereafter;*" and it did not appear that the day whereon the land was offered for sale, was "*a fair day;*" and because the trustees having at their first offer to sell this property, refused any bid ,under sixty dollars, there was no such sufficient notice given afterwards of a change of that determination, and none would attend who were not willing to give sixty dollars per acre.

Thirdly. Because the land was sold for far less than its value, from the reasons before assigned. *Andrews vs. Scotton,* 2 *Bland,* 629; *Bell vs. Webb and Mong.,* 2 *Gill,* 163; *Tomlinson vs. McKaig,* 5 *Gill,* 256; *Dalrymple vs. Taneyhill,* 4 *Md. Ch. Dec.,* 174; *Kauffman vs. Walker,* 9 *Md. Rep.,* 240; *Bolgiano vs. Cook, et al.,* 19 *Md. Rep.,* 391; *Watson vs. Birch,* 2 *Vesey, Junr.,* 52; *Williamson vs. Dale,* 3 *John. Ch. Rep.,* 290; *Requa vs. Rea & Wife,* 2 *Paige,* 339; *Hubbard vs. Jarrell, et al.,* 23 *Md. Rep.,* 66; *Billingslea vs. Baldwin & Wife, et al.,* 23 *Md. Rep.,* 104; 2 *Danls. Ch. Practice,* 1471.

It is also respectfully insisted that the order of the Court substituting Walker as the purchaser of "Pleasant Prospect," in the place of Wilson, was contrary to the practice of the Court, and illegal, and ought to be reversed:

1st. Because the application should have been made by the purchaser, Wilson. *Cross et al. vs. Cohen*, 3 *Gill*, 270, 271.

2d. Because there was no proof offered to sustain the averments of the petition for substitution, nor any assent of the trustees or of the parties to those causes.

3d. Because the quantity of land had not been ascertained, nor had the purchaser in any manner complied with the terms of sale; and in that condition there could be no one substituted, especially as an appeal had been taken from the ratification of the sale. And should the substitution be made and Walker fail to comply with the terms of sale, Wilson would be released from all responsibility. *Matthews vs. Stubbs*, 2 *Brown Rep.*, 391; 2 *Daniel Chan. Prac.*, 1471, 1472.

*Daniel Clarke* and *Thomas G. Pratt*, for the appellees:

The sale was properly ratified and confirmed by the Court:

1. Because the trustees having given more than three weeks' previous notice of sale by advertisements inserted in the newspapers printed at Upper Marlboro', and by handbills extensively circulated in Prince George's county and elsewhere, and also by advertisements inserted in the Baltimore Sun and National Intelligencer, and having failed to make sale, or receive a bid, and the sale to Thos. R. Wilson having been made, after giving *more than three weeks'* (viz: *four* weeks') previous notice, inserted in the Marlboro' Gazette and Prince Georgian, the only papers printed at Upper Marlboro', the *requirements of the decree had been complied with, and the notice was sufficient*. *Johnson vs. Dorsey*, 7 *Gill*, 269; *Latrobe vs. Herbert*, 3 *Md. Ch. Dec.*, 380; *Glenn vs. Wootten*, 3 *Md. Ch. Dec.*, 514.

2. Due and proper notice of the day of sale having been given, the land was fairly put into the market, and there was

proper competition for the same. None of the witnesses examined in the cause testify to any *unfairness* on the part of the trustees; on the contrary, their course was dictated by the highest sense of duty to the Court, and those interested in the estate. The creditors were all represented by their attorneys, who attended the sale. The evidence of one of the witnesses shows, that he attended both sales, and he proves that at the second sale there was present more persons residing out of the county than there were at the first offer of the land. " He thinks there was a fair attendance at the second sale, and probably more bidders than at the first." This witness also states that he made one or two bids for the property, and did not consider it worth to the witness more than forty-five dollars, and that was his reason for ceasing to bid.

3. There is no such inadequacy of price, proved in this case, as will vacate the sale. *Johnson vs. Dorsey*, 7 *Gill*, 269; *Latrobe vs. Herbert*, 3 *Md. Ch. Dec.*, 375; *House vs. Walker*, 4 *Md. Ch. Dec.*, 62.

The evidence in reference to the value of the land is conflicting. All the witnesses examined, however, deposed to the fact that they were not willing to be returned as purchasers at forty-five dollars per acre, that they knew of no one who was willing to pay more than that price, and they were unable to say that the land would bring more if again exposed for sale.

4. The evidence does not establish any fraudulent collusion between Moore and Wilson, or show any fraud or improper conduct on the part of Wilson, which would vacate the sale.

In reference to the objection made by the appellants to the substitution of Walker in the place of Wilson, as purchaser, it is submitted, first, that there is no settled practice of Courts of Equity, in cases where another party is substituted as *purchaser* of real estate sold by trustees, which requires the application to be filed in the name of the *original* purchaser. All that is necessary in order to enable the Court to make the substitution, is satisfactory evidence that the *original* pur-

chaser has transferred his rights and interest to the party who is to be substituted; that the original party consents to the substitution, and that the substituted purchaser should be made a party to the cause so as to be subjected to the jurisdiction of the Court. In this case the petition was filed by Jonathan T. Walker, who asked to be substituted for the original purchaser. He therefore became, by the filing of this petition, a party to the cause. Accompanying the petition was a letter, which was made part thereof, addressed by Wilson, the purchaser, to the trustees, stating the fact that he had disposed of his interest in the property sold to him, and requesting the trustees to make the necessary application, at his request, to the Court, to substitute him as purchaser. The genuineness of this letter is not disputed or denied. It is an exhibit which the trustees, who are the officers of the Court, permitted to go before the Court as the evidence showing the transfer of Wilson's interest to Walker, and his desire to have Walker substituted as purchaser. The petition of Walker, verified by affidavit, and the letter of Wilson, furnished all that was necessary in order to enable the Court to make the substitution. *Mathews vs. Stubbs*, 2 *Brown, Ch. Rep.* 391; *Proctor vs. Farnam*, 5 *Paige*, 614.

Secondly. By the ratification of the sale Wilson, the original purchaser, became vested with an interest in the said real estate, which he was capable of disposing of, and before entertaining a petition for substitution, it was not necessary to aver that it was a re-sale for the same price. If there were any premium or advance received by Wilson upon the re-sale, he *was entitled to receive it*, and it would not enure to the benefit of the estate. *Anderson vs. Foulke*, 2 *Har. & Gill*, 346, 352, 368; 2 *Daniel's Chan. Prac.*, 1464; *Rigby vs. Mac Namara*, 6 *Vesey*, 515; *Vale vs. Davenport*, 6 *Vesey*, 615; *Mathews vs. Stubbs*, 2 *Brown's Ch. Rep.*, 391; *Proctor vs. Farnam*, 5 *Paige*, 614.

In this case, however, the petition of Walker, supported by affidavit, shows that he has become the purchaser, "*at and for the same price for which the said real estate was sold* to the

said Thomas R. Wilson." The allegation in the appellants' petition, that Walker had agreed to pay Wilson an advance of one thousand dollars, is founded upon *mere information or belief*, and is not sustained by *any proof* in the cause.

Thirdly. The appellants having appealed from the order of the Court ratifying the sale, but failing to file an appeal bond, and an affidavit that said appeal was not taken for delay, the said order was not stayed or delayed, and the Court had full power, pending the appeal, to make the substitution. *Code Pub. Gen'l Laws, Art.* 5, *sec.* 31; *Act of* 1864, *ch.* 322; *Johnson vs. Goldsborough*, 1 *H. & J.*, 499; *Beatty vs. Chapline*, 2 *H. & J.*, 7; *Thompson vs. McKim*, 6 *H. & J.*, 302; *Ohio Life Ins. & Trust Co. vs. Winn & Ross*, 4 *Md. Ch. Dec.*, 253; *Williams vs. Savage Manufacturing Co.*, 1 *Md. Ch.*, 306, 324, 331; *McKim & Kennedy vs. Mason*, 3 *Md. Ch. Dec.*, 213.

ALVEY, J., delivered the opinion of this Court:

The record before us embraces two appeals taken by the same parties, from orders of the Circuit Court for Prince George's county, as a Court of Equity. The first of these appeals, being that taken from the order of the 28th of December, 1865, overruling exceptions to, and ratifying, the sale made and reported by the trustees, presents three distinct grounds of objection to the sale:

1st. That due and legal notice as required by the decree of sale, was not given, and for want of such sufficient notice the land was not fairly put into market, and consequently there was not proper competition at the sale.

2d. That the price obtained for the land was inadequate.

3d. That the sale was effected at the price reported, by collusion between Wilson, the purchaser, and a certain David P. Moore, who was also a bidder at the sale.

These propositions embrace the full scope of the exceptions:

1. While it is fully conceded that the notice given of the first proposed sale was ample, it is contended that that given of the deferred sale was insufficient, and that the sale made on the 24th of October, 1865, should be set aside because other

notice than the publication of the advertisement in the two Marlboro' papers was contemplated by the decree authorizing and directing the sale of the property. We think, however, that the notice actually given, under the circumstances of the case, and in the absence of any evidence of surprise or prejudice to those interested, was sufficient. It is true, the decree directed the trustees to give at least three weeks previous notice of the time, place, manner and terms of sale, by advertisement inserted in the newspapers printed in Upper Marlboro', *and such other notice as they should think proper.* This discretion conferred upon the trustees was exercised to the fullest extent in reference to the first offer of the property, and it seems to have wholly failed in bringing together any considerable number of persons at the time and place designated for the sale, or of producing any competition whatever among bidders. After this first effort, we think the trustees were justified in concluding that a more extensive publication of the notice than in the two Marlboro' papers was useless, and would but entail unnecessary expense upon the estate, which it was their duty to avoid, if it could be done without prejudice to those interested in obtaining the largest price for the property.

That the efforts of the trustees were to obtain a fair price, and that they acted in all that was done from the best motives, are facts uncontroverted. They have sworn that the sale was fairly made, and we are bound to accept their statement as true, until shewn to be otherwise. This exception, as to the insufficiency of notice, stands upon the naked allegation, without the least attempt to show that there were persons who would likely have been bidders at the sale, left uninformed, or who were deceived or misled by the want of more extensive notice than was actually given. We can perceive no reason therefore for regarding the notice given by the trustees as insufficient, under all the circumstances of the case.

2. The next point is as to the inadequacy of price. This exception was attempted to be sustained by proof taken under the order of the Court; but in our opinion, the exceptant

failed.   There seems to be a great contrariety of opinion among the witnesses examined, as to the value of the land. One thing, however, seems to be clearly established by the evidence, and that is, the farm was in bad condition, and such as most likely to detract seriously from its value in the estimation of bidders.   While many of the witnesses estimated the value of the land higher than the price accepted by the trustees, none of them were willing to become purchasers at that price, nor did they know of any person who would give more, nor have the exceptants themselves informed the Court that they knew of any person who would give more, if the property were again exposed to sale.   If the property was really of much greater value than the price accepted by the trustees, the creditors, the parties deeply interested in obtaining the largest possible price for it, should have attended the sale, and seen to it, that a better price was obtained than that reported by the trustees.   These creditors, the exceptants, do not pretend that they were uninformed of the time and place of sale, and if less has been accepted than the property is really worth, it may be attributed to the fault of the creditors themselves, rather than to any other cause.   And sales, like the one under consideration, should not be vacated and set aside for causes that the parties interested might, with reasonable diligence and effort, have obviated.   Every intendment will be made to support such sales; and it is only where the Court can see that injustice will be done by the ratification of a sale, to a party not in default, that it will interfere to prevent it.   It would certainly be a departure from the well established practice of the Courts of Equity of this state, to set aside a sale *bona fide* made, upon the mere diversity of opinion among witnesses, as to the value of the property, unless it were apparent that the price reported was so grossly inadequate as to do injury to parties not in default.   Here the evidence fails to convince us of any thing like such gross inadequacy of price as would justify the rejection of the sale.

3. We think the exception founded upon the alleged collusion between Wilson and Moore, likewise unsustained by the

evidence. The trustees and Wilson all swear to the fairness of the sale, and we fail to discover any thing in the evidence that could, by reasonable construction, be made to establish that sort of collusion and fraud that would vitiate the sale, and require the Court to set it aside.

As to the second appeal, that taken from the order of the 21st of February, 1866, allowing the substitution of Walker in the place of Wilson, as purchaser, we can perceive no interest in the appellants to authorize them to maintain the appeal in this Court. There is no evidence that there was any profit made by Wilson by the transfer to Walker. Be this however as it may, it could form no reason for disallowing the substitution, unless it be shewn that there was collusion or combination, such as would affect the validity of the sale. But here there is no pretense that such was the case. The ratification or rejection of the sale must depend on the state of facts existing at its date, and not on subsequent events. As the purchaser is made to bear all loss by depreciation subsequent to the time of sale, he should be entitled to all profit that he may be able to make of the property after that time. The Court, and parties to the proceeding under which the land was sold, were only interested in the substitution to the extent of having a responsible party, and one who would readily comply with the terms of sale, put in the place of the original purchaser; and there is not the least pretense that the party substituted is less responsible than the original purchaser, or that he will be less prompt in complying with the terms of sale. We think, therefore, that this last appeal should be dismissed.

The order of the 28th of December, 1865, overruling exceptions to, and ratifying the sale made and reported by the trustees in this case, is affirmed, and the appeal taken from the order of 21st of February, 1866, allowing the substitution of J. T. Walker, in the stead of Thomas R. Wilson, the original purchaser, is dismissed.

　　　　　　　　　　*Order affirmed, and second appeal dismissed.*

(Decided 6th February, 1868.)