*Christine Marie Nolan v. Michael W. Nolan, Jr.*, No. 0695, Sept. Term 2022.
Opinion by Zic, J.

**DIVORCE – EQUITABLE DISTRIBUTION OF TRUSTEE'S FEES**

When conducting divorce proceedings, a trial court sits in equity and is granted broad discretionary authority to balance the equities of the parties when distributing marital property. The trial court committed no error by finding that equity required one party to pay the entirety of the trustee's fees incurred after ordering the sale of the marital home and dividing the net proceeds equally pursuant to Real Property § 14-107.

Circuit Court for Montgomery County
Case No. 112910FL

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0695

September Term, 2022

_____

CHRISTINE MARIE NOLAN

v.

MICHAEL W. NOLAN, JR.

_____

Kehoe,
Leahy,
Zic,

JJ.

_____

Opinion by Zic, J.

_____

Filed: November 29, 2023

* Kehoe, Christopher B., J., now retired, participated in the hearing of this case while an active member of this Court, and after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.
* Tang, Rosalyn, J. and Albright, Anne, J. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This case arises from a 2015 marital settlement agreement between appellant Christine Nolan and appellee Michael Nolan. In March 2020, pursuant to terms of the settlement agreement, Mr. Nolan filed a motion for sale of the marital home in the Circuit Court for Montgomery County. The circuit court granted Mr. Nolan's motion, appointed a trustee, and ordered Ms. Nolan to pay for the costs of the trustee.[1] Ms. Nolan now appeals and challenges the circuit court's authority to order her to pay the full amount of the trustee's costs.

## QUESTION PRESENTED

Ms. Nolan presents one question for our review, which we have rephrased and reframed as follows:[2]

> Whether the circuit court erred in ordering Ms. Nolan to pay the entirety of
> the trustee's costs.

For the reasons that follow, we answer Ms. Nolan's question in the negative and affirm the judgment of the circuit court.

---

[1] Throughout the procedural history of this case, the $22,875 that Ms. Nolan was ordered to pay has been referred to as both the trustee's "commission" and the trustee's "costs." This sum includes both the four percent commission awarded to the trustee for the sale of the Nolans' marital home, totaling $22,000, and $875 in appraisal and filing fees paid by the trustee that are subject to reimbursement. In this opinion, for clarity, we will refer to the $22,875 that Ms. Nolan was ordered to pay as the trustee's costs.

[2] Ms. Nolan phrased the issue as follows:

> 1.    Does a circuit court have the authority to order one co-
> tenant of real property to pay the entire trustee[']s
> commission in a judicial sale?

## BACKGROUND

In July 2013, Mr. Nolan filed a Complaint for Absolute Divorce in the circuit court. The parties entered into a marital settlement agreement ("Agreement") on January 21, 2015. The circuit court incorporated but did not merge the terms of the Agreement in its March 13, 2015 Judgment of Absolute Divorce. In relevant part, the settlement granted Ms. Nolan exclusive use and possession of the marital home for a period of three years following the formation of the Agreement. The Agreement also required Ms. Nolan to pay all mortgage and maintenance expenses.[3] After either the expiration of the exclusive use and possession period or Ms. Nolan's remarriage, the marital home was to be listed for sale. Any proceeds or deficiencies of the sale of the home were to be shared equally between the parties.

Ms. Nolan remained in the home after the expiration of the three-year exclusive use and possession period.[4] Ms. Nolan refused to sell following the expiration of the period because she believed there was "not enough money to sell the property because of the liens." Mr. Nolan began paying half of the marital home's mortgage in July 2019.[5] On March 13, 2020, Mr. Nolan filed a Motion for Sale of Former Marital Home, and on

---

[3] For maintenance costs greater than $200, the parties were required to agree to the repair and share the cost equally.

[4] There is some confusion regarding whether the three-year use and possession period expired in January 2018, three years after the Agreement was placed on the record, or in March 2018, three years after the divorce was finalized. In either event, the home was to be sold in early 2018.

[5] Throughout the exclusive use and possession period and until July 2019, Ms. Nolan paid the mortgage of the marital home in full.

May 27, 2020, Ms. Nolan filed a timely Answer opposing the Motion for Sale. Following a hearing on October 30, 2020, the circuit court granted the Motion for Sale on November 6. The court appointed a trustee to conduct the sale,[6] and ordered Ms. Nolan to provide a key and any relevant documents to the trustee to facilitate the sale of the home. Finally, the court ordered Ms. Nolan to pay the trustee's costs "unless [the court determined] at a later hearing that those costs should be allocated in a different manner."

During the October 30, 2020 hearing, the circuit court explained that Ms. Nolan's continued residence in the marital home nearly three years after the exclusive use and possession period ended, along with Ms. Nolan's continued refusal to list the property for sale, was not what the parties agreed to in 2015. In short, "[t]he parties reached an agreement; everyone understood what the agreement was; and that agreement was that the [marital home] would be sold at the termination of the three years." The court explained that § 8-202(b)(2) of the Family Law Article grants the court the authority to order the partition or sale of property.[7] Section 14-107 of the Real Property Article

---

[6] Ms. Nolan did not protest the appointment of the trustee.

[7] The transcript refers to "8-203(b)(2) of the Family Law Article" instead of § 8-202(b)(2). We assume that this is a transcription error. Section 8-202(b)(2) provides:

> (b) When the court determines the ownership of personal or real property, the court may:
>
> . . .
>
> (2) as to any property owned by both of the parties, order a partition or a sale instead of partition and a division of the proceeds.

3

further allowed the circuit court to decree a partition or sale of real property.[8]  Noting that the circuit court "is a court of equity," the court found that it would be inequitable for Ms. Nolan to remain in the home any longer and granted Mr. Nolan's motion for sale in lieu of partition.  Finding that Ms. Nolan benefited by remaining in the marital home for an additional three years, with Mr. Nolan paying one-half of the mortgage for over a year, the court ordered Ms. Nolan to pay the costs of the trustee appointed to sell the home. The court also denied Mr. Nolan's request to order Ms. Nolan to pay attorneys' fees because the court had already "order[ed] [Ms. Nolan] to pay for the trustee."

On January 27, 2021, the trustee filed a Motion for Appropriate Relief after Ms. Nolan failed to provide a key to the home as ordered in the November 6, 2020 order.  The motion was granted, and the trustee moved forward with listing and selling the home. Ms. Nolan appealed, challenging the apportionment of the trustee's costs.  In his answering brief, Mr. Nolan argued that Ms. Nolan's appeal was impermissible because it

---

[8] This section states in pertinent part:

> A circuit court may decree a partition of any property, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase.  If it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree its sale and divide the money resulting from the sale among the parties according to their respective rights.

Md. Code Ann., Real Prop. § 14-107(a).  Effective October 1, 2022, § 14-107 has been repealed and Real Prop. §§ 14-701 through 14-713 have been enacted in its place.  This does not affect our analysis.

appealed a non-final judgment. The Appellate Court of Maryland agreed with Mr. Nolan, and in August 2021, dismissed Ms. Nolan's appeal "as not allowed by law."

On September 24, 2021, the circuit court deferred resolving allocation of the trustee's fee and reimbursement of costs until the trustee filed a motion requesting payment. The home was sold for $550,000, and the sale of the home proceeded to settlement on October 29, 2021. Once all debts on the property were settled, the net proceeds of the October 29, 2021 sale were $35,896.45. This amount was deposited by the trustee into the circuit court's registry on November 1, 2021. The trustee filed an Accounting and Petition for Fees and Reimbursement of Costs on November 10, 2021, requesting payment of $22,875.[9] On January 12, 2022, the trustee deposited an additional $166.39 into the court's registry, which was the remaining balance of escrowed funds held by the settlement company to be used to pay the home's water bill. This brought the total proceeds from the sale of the home to $36,062.84.

On May 6, 2022, the circuit court held a hearing[10] on the Trustee's Accounting and Petition for Fees and Reimbursement of Costs, at which time it determined that Mr.

---

[9] This amount was calculated as follows: (1) a trustee is to be compensated in the amount of four percent of the purchase price of the home, which here equates to $22,000, per the Court Rules – Sixth Judicial Circuit of Maryland, Subtitle BR., Sales – Judicial, Rule BR1(a); and (2) the trustee incurred $875 in expenses and is entitled to reimbursement in the amount of $850 for the appraisal of the home, and $25 to open an account to deposit the net proceeds of the sale.

[10] During the May 6, 2022 hearing, the court specifically referenced its November 6, 2020 order, finding that the court "does have the authority to approve the trustee's commissions, to direct the payment of those as ordered by [the court] in [the November 2020] order."

and Ms. Nolan were each entitled to one-half of the net proceeds from the sale of the home, or $18,031.42 each. Implementing the circuit court's November 6, 2020 order, the circuit court ordered Ms. Nolan to pay $4,843.58[11] to the trustee. On May 25, 2022, the Registry of the Court released $18,031.42 each to Mr. Nolan and the trustee and entered judgment against Ms. Nolan in the amount of $4,843.58. Ms. Nolan subsequently appealed, challenging the circuit court's authority to order that her half of the sales proceeds go towards the entirety of the trustee's fees.

## STANDARD OF REVIEW

Under Maryland Rule 8-131(c), "[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." The appellate court, however, should "not set aside the judgment of the trial court on the evidence unless clearly erroneous." Md. Rule 8-131(c). We review legal questions under the non-deferential de novo standard of review. *Floyd v. Balt. City Council*, 241 Md. App. 199, 208 (2019). A court's interpretation of the Maryland Rules is one such matter of law to be reviewed de novo. *Xu v. Mayor of Balt.*, 254 Md. App. 205, 211 (2022).

---

[11] This amount represents the difference between the compensation of $22,875 owed to the trustee, and what was covered by Ms. Nolan's half of the proceeds of the sale, $18,031.42.

6

**I.     THE CIRCUIT COURT DID NOT ERR IN ORDERING MS. NOLAN TO PAY THE ENTIRETY OF THE TRUSTEE'S COSTS.**

On appeal, Ms. Nolan challenges the circuit court's authority to order one co-tenant of real property to pay the entire trustee's costs in a judicial sale. Ms. Nolan argues that Family Law § 8-202 and Real Property § 14-107 limit the circuit court to ordering either the partition or the sale of property according to the parties' respective rights. Ms. Nolan claims the circuit court erroneously reduced her share of the marital home's sale proceeds "below that of her rights in the property by ordering her to pay the entire trustee's commission."

In response, Mr. Nolan argues that Maryland law vests the circuit court with the power to order Ms. Nolan to pay 100 percent of the court-appointed trustee's fees. Mr. Nolan points to several provisions of the Family Law Article and Real Property Article to argue that the circuit court possessed "broad authority to consider any factor deemed necessary or appropriate" in making equitable adjustments in ordering the sale of the marital home, and therefore did not err in considering Ms. Nolan's breach of the marital agreement in ordering Ms. Nolan to pay the entirety of the trustee's costs.

The court's ability to order partition and sale of the Nolans' marital home pursuant to Family Law § 8-202 and Real Property § 14-107 is not in question, only the court's subsequent decision to order Ms. Nolan to pay the entirety of the trustee's fees after splitting the proceeds of the sale equally. We agree that the circuit court possessed the

7

authority to order Ms. Nolan to pay the entirety of the trustee's costs, and therefore affirm.

Real Property § 14-107(a) [12] granted circuit courts the power to "partition [] any property, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase." If the court determines that the property cannot be partitioned without harm or loss to one or both of the parties, the court may order the property's "sale and divide the money resulting from the sale among the parties according to their respective rights." Real Prop. § 14-107(a).

Maryland appellate courts have long held that a court sitting in equity has broad discretionary authority. *See, e.g.*, *Gittings v. Worthington*, 67 Md. 139, 149 (1887) ("It is undoubtedly within the power of a court of equity to adapt its methods to the exigencies of justice, being careful, however, not to grasp at forbidden power, for the purpose of relieving the hardship of a particular case."); *Meyers v. East End Loan & Sav. Ass'n of Balt. City*, 139 Md. 607, 613 (1922) (holding "courts of equity do not hesitate to adapt their methods to the exigencies of justice or to protect the equitable rights of those concerned") (citations omitted).

An action under Real Property § 14-107 is one such action that is "equitable in nature so that the [circuit court] is accorded broad discretionary authority." *Maas v.*

---

[12] Real Prop. § 14-107(a) has since been repealed and replaced by Real Prop. §§ 14-701 through 14-713. See footnote 8.

*Lucas*, 29 Md. App. 521, 525 (1975).  In fact, when addressing the issue of partitioning

property, we often find the following quote by Justice Story instructive:

> "In matters of partition," says Judge Story, "a court founds
> itself upon its general jurisdiction as a court of equity, and
> administers its relief, *ex [aequo] et bono*[13] according to its
> own notions of general justice and equity between the
> parties." 1 Story's Eq. sec. 656 *b*.

*Dugan v. Mayor of Baltimore*, 70 Md. 1, 8 (1889).

Any circuit court adjudicating issues relating to divorce sits in equity.  Fam. Law

§ 1-201(b)(4).  "[W]hen a court of equity has once rightly assumed jurisdiction it will

retain its jurisdiction in order to settle all questions that might arise out of the subject in

controversy and give complainants complete relief, even in those respects in which it

would not have had jurisdiction originally." *Harris v. Harris*, 213 Md. 592, 597 (1957).

Furthermore, when divorcing parties make agreements to settle property issues, those that

are incorporated but not merged into the final divorce decree may be enforced by the

court as an independent contract and thus subject to general contract law.  Fam. Law

§ 8-105(a)(2); *Fultz v. Shaffer*, 111 Md. App. 278, 298 (1996) (citing *Feick v. Thrutchley*,

322 Md. 111, 114 (1991)).

We find *Maas* to be particularly useful in our analysis.  *Maas* concerned the

distribution of funds from the sale of a property, in which the father had a one-half

interest, and his two children shared the other one-half interest, all as tenants in common.

29 Md. App. at 523-24.  At some point, the father made improvements to the property by

---

[13] This Latin phrase translates to "[a]ccording to what is equitable and good."  *Ex aequo et bono*, *Black's Law Dictionary* (11th ed. 2019).

constructing two apartments above a garage, which he rented for a profit while the children were co-tenants. *Id*. The father also paid off the mortgage shortly after the co-tenancy was created in 1943, while the children were still young. *Id*. The property was sold, and on appeal, this Court considered, among other things, whether the father was entitled to contribution for his discharge of the mortgage. *Id.*

In addressing this question, this Court noted there is a "latitude allowed [to] an equity court in distributing the proceeds of a partition sale." *Id.* at 525 (citing, among others, *Bowers v. Balt. Gas & Elec. Co.*, 228 Md. 624, 629 (1962)). The circuit court awarded the father contribution for the mortgage payments, and this Court reversed. *Id.* at 533-34. This Court noted that while the circuit court's "motivations were unquestionably equitable," and reiterating that "courts of equity do not hesitate to adapt their methods to the exigencies of justice or to protect the equitable rights of those concerned," this could not overcome the presumption that the father's discharge of the mortgage was a gift to his infant children. *Id.* at 534 (internal quotations and citations omitted). Although the circuit court has broad discretion to balance the equities of the parties, this Court found it would be inequitable to "impose a personal debt upon the children where none ever existed." *Id.* at 536. We find this discussion of the discretionary authority granted to a court of equity useful in our case, and we do not perceive that any of the actions taken by Mr. Nolan during the period between the expiration of the three-year exclusive use period granted to Ms. Nolan and the sale of the home were made or accepted as gifts.

10

Here, the circuit court's order of judicial sale merely carried out what the parties had agreed to five years before: that the marital home would be "sold, listed for sale and any proceeds shared equally or deficiencies, shared equally" at either the expiration of Ms. Nolan's three-year exclusive use and possession period or when Ms. Nolan remarried. Requiring that proceeds and deficiencies were to be split equally reflected the equal interest of Mr. and Ms. Nolan in the home. Once the home was ultimately sold, albeit nearly three years after it was intended, the net proceeds of $36,062.84 were divided equally with Mr. and Ms. Nolan each receiving $18,031.42. The court's decision to split the proceeds of the sale equally between Mr. Nolan and Ms. Nolan after the judicial sale clearly falls within the power of the circuit court under Real Property § 14-107(a).

Ordering Ms. Nolan to pay the entirety of the trustee's costs after equally splitting the proceeds of the sale as required by both the marital settlement agreement and Real Property § 14-107 was within the purview of the court's equitable powers. Ms. Nolan remained in the home long after the three-year period concluded, with Mr. Nolan paying half of the mortgage payments beginning in July 2019. During that time, she consistently refused to sell the home, to the point where the court was required to appoint a trustee, and even after the trustee was appointed, continued to frustrate efforts to sell the home. It was not until after the proceeds were split equally between the parties that Ms. Nolan was ordered to pay the trustee's fees of $22,875.

Pursuant to the discretion granted to the court in Real Property § 14-107 to "divide the money resulting from the sale among the parties according to their respective rights,"

11

the circuit court ordered Ms. Nolan to pay the trustee's fees. This is not an instance where a personal debt is being imposed where it did not previously exist as in *Maas*. *Maas*, 29 Md. App. at 536. The circuit court observed Ms. Nolan's actions prior to and after the trustee was appointed, and found it equitable to hold her responsible for the costs associated with appointing the trustee to sell the home. Ordering Ms. Nolan to pay the trustee's fees is equivalent to the circuit court exercising its "broad, discretionary authority to distribute the proceeds of sale to the parties" after considering Ms. Nolan's actions prior to and during the sale. *Meyer v. Meyer*, 193 Md. App. 640, 654 (2010) (citing *Maas*, 29 Md. App. at 525-26). We therefore find that it was within the circuit court's authority to order Ms. Nolan to pay the entirety of the trustee's costs on the sale of the Nolans' marital home, and doing so was not in error.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

12